FILED
CLERK, U.S. DISTRICT COURT

12/18/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_MMC\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2024 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 2:24-CR-00756-MCS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2261A(2)(B): Stalking; 18 U.S.C. § 982: Criminal Forfeiture] |
| GABRIEL HAY,<br>   aka "Mr. Handz,"<br>   aka "Diamondhandz,"<br>   aka "Centurion,"<br>   aka "Vaultkeeper," and<br>GAVIN MAYO,<br>   aka "Gavinm," | |
| Defendants. | |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At all times relevant to this Indictment:

A.   DEFENDANTS AND RELEVANT INDIVIDUALS

1.   Defendant GABRIEL HAY ("HAY"), also known as ("aka") "Mr. Handz," aka "Diamondhandz," aka "Centurion," aka "Vaultkeeper," resided in Los Angeles County, California.

2. Defendant GAVIN MAYO ("MAYO"), aka "Gavinm," resided in Pennsylvania, Florida, and Los Angeles County, California.

3. Co-Conspirator 1 ("CC-1") resided in Virginia and Los Angeles County, California.

4. Project Manager 1 resided in Orange County, California.

B. DEFINITIONS

5. Cryptocurrency, a type of virtual currency, is a decentralized, peer-to-peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies. Examples of cryptocurrency are Bitcoin, Ether, Solana, Tether ("USDT"), Chainlink ("LINK"), and Litecoin. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers.

6. Cryptocurrencies operate on a "blockchain," which is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every transaction. Examples of blockchains are the Bitcoin blockchain, Ethereum blockchain, and Solana blockchain.

7. Cryptocurrency is stored in a virtual account called a wallet. Wallets are software programs that interface with blockchains and generate and/or store public and private keys used to send and receive cryptocurrency. A public key or address is akin to a bank account number, and a private key is akin to a PIN number or password that allows a user the ability to access and transfer value associated with the public address or key. To conduct transactions on a blockchain, an individual must use the public address (or

"public key") and the private address (or "private key").

8. A non-fungible token ("NFT") is a cryptographic token that exists on a blockchain and represents ownership of a specific item or asset. Similar to a digital certificate of authenticity, NFTs are used to verify the ownership or history of a specific item or asset. NFTs are secured by the blockchain, which allows for transfer of ownership and can be used to verify the provenance of an NFT. NFTs can be created for a variety of assets, including art, collectibles, and even real estate. NFTs are created through a process called minting, which is commonly done by the artists, creator, or license-holder, and involves publishing an NFT on a blockchain so that it can be bought, sold, and traded.

9. A rug pull is a type of fraud scheme in which the creator of an NFT or digital asset project fraudulently solicits funds from purchasers in connection with the project and then abruptly abandons the project and retains the funds.

COUNT ONE

[18 U.S.C. § 1349]

[ALL DEFENDANTS]

The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 9 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A. OBJECT OF THE CONSPIRACY

10. Beginning on a date unknown to the Grand Jury, but no later than in or around May 2021, and continuing through at least in or around May 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAY and MAYO, CC-1, and others known and unknown to the Grand Jury knowingly conspired and agreed with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B. MANNER AND MEANS OF THE CONSPIRACY

11. The object of the conspiracy was to be carried out, and was carried out, in substance, as follows:

    a. Defendants HAY and MAYO, CC-1, and others would sponsor a number of NFT and other digital asset projects and undertake promotional activities in support of those projects.

    b. During the launch and promotion of these projects, defendants HAY and MAYO, and CC-1, would make materially false and misleading statements, or cause others to make materially false and misleading statements, to potential purchasers concerning the NFTs or other digital assets being launched and the projects' potential to create value for purchasers of those assets.

   c. Defendants HAY and MAYO, and CC-1, would publicize to potential purchasers false and misleading project "roadmaps" detailing plans for the NFTs and other digital asset projects after their launch.

   d. Defendants HAY and MAYO, and CC-1, would hire other individuals to do a variety of tasks for the projects, including the creation of digital assets to sell to victims, the registration of email domains and social media accounts, and the moderation of chat groups affiliated with the projects to prevent the dissemination of information exposing the projects as rug pulls and the identity of the defendants.

   e. Once purchasers paid for the NFTs and other digital assets, defendants HAY and MAYO, and CC-1, would abandon the projects and split the funds raised between themselves and other co-conspirators.

   f. Defendants HAY and MAYO, and CC-1, would use a variety of means to conceal their involvement in the fraudulent NFTs and other digital asset projects including inventing aliases, falsely identifying other individuals or causing other individuals to be falsely identified as owners of the projects, falsely denying their involvement or causing others to deny their involvement to potential purchasers in chat groups associated with the projects, and harassing individuals who publicly identified them as being involved in the projects.

   g. Combinations of defendants HAY and MAYO, and CC-1, would use the above-described tactics for several NFTs and other digital assets, including projects known as Vault of Gems, Faceless,

Sinful Souls, Clout Coin, Dirty Dogs, Uncovered, MoonPortal, Squiggles, and Roost Coin.

    h.    As a result, combinations of defendants HAY and MAYO, and CC-1, raised over $22.4 million from purchasers.

    i.    Defendants HAY and MAYO, and CC-1, would use interstate and foreign wire communications in furtherance of the above-described scheme.

    C.    OVERT ACTS

12. On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants HAY and MAYO, CC-1, and co-conspirators known and unknown, committed and knowingly caused others to commit various overt acts, within the Central District of California and elsewhere, including, but not limited to, the following:

**Vault of Gems NFT Rug Pull**

<u>Overt Act No. 1</u>:    On August 31, 2021, defendant HAY registered the Vault of Gems Twitter account.

<u>Overt Act No. 2</u>:    On September 4, 2021, defendant HAY registered the Vault of Gems website. The website falsely claimed that Vault of Gems was to be the "first NFT project to be pegged to a hard asset." The website further falsely claimed that the project's "goal is to deploy a private Vault of Gems marketplace where VOG virtual assets can be exchanged in real time for hard assets. This will be achieved by working firsthand in partnerships with jewelers around the globe."

Overt Act No. 3: In and around August and September 2021, defendant HAY promoted the Vault of Gems NFTs by creating, or causing the creation of, Vault of Gems NFTs resembling the images below:

  

Overt Act No. 4: On September 17, 2021, defendant MAYO posted a video on TikTok falsely claiming that Vault of Gems NFTs were the "first NFT[s] pegged to a hard asset, like jewelry" and that the project had "already started making [its] own exchange" for jewelers to use.

Overt Act No. 5: On September 20, 2021, defendant MAYO used his cryptocurrency account to supply the initial funds to the Vault of Gems contract creator address.

Overt Act No. 6: On September 21, 2021, defendant HAY made the Vault of Gems NFTs available for minting on the Ethereum blockchain, thereafter raising more than $1,080,000 worth of Ether from purchasers who sent funds to the Vault of Gems mint address.

Overt Act No. 7: On an unknown date no later than September 22, 2021, defendant HAY caused the Vault of Gems smart contract to distribute funds from the mint address to defendant HAY and others.

Overt Act No. 8: On September 22, 2021, and continuing until October 26, 2021, defendant HAY received approximately 269 Ether to

his cryptocurrency wallet from the Vault of Gems mint address.

<u>Overt Act No. 9</u>:   On October 1, 2021, defendant HAY directed the registration of the Vault of Gems TikTok account.

<u>Overt Act No. 10</u>:   On an unknown date no later than November 20, 2021, defendants HAY and MAYO abandoned the Vault of Gems project.

**Faceless NFT Rug Pull**

<u>Overt Act No. 11</u>:   On an unknown date no later than October 20, 2021, defendant MAYO hired an artist to generate artwork for the Faceless NFT project resembling the images below:

  

<u>Overt Act No. 12</u>:   On an unknown date no later than October 19, 2021, defendant MAYO hired Project Manager 1 to assist with the Faceless project.

<u>Overt Act No. 13</u>:   On October 20, 2021, Project Manager 1 asked defendant MAYO about biographies of Faceless project team members to feature on the project's Discord, to which defendant MAYO responded, "[m]ake em up" and then supplied Project Manager 1 with an example of a made-up biography of an artist working on the project.

<u>Overt Act No. 14</u>:   On October 22, 2021, defendant HAY

registered the Faceless website.  The Faceless website included a project "roadmap" advertising the steps the project would take to achieve value for NFT purchasers.  The website falsely claimed that: phase one of the Faceless NFT project was to include the release of the first edition of a "Faceless Chronicles" comic book; and phase two was to include: (1) the release of the second edition of the comic book, (2) the release of a Faceless movie, (3) the launch of a Faceless clothing company, and (4) "33% of secondary revenue [going] to [a] charity of [the] community's choice."

Overt Act No. 15:  On November 19, 2021, defendants HAY and MAYO made the Faceless NFTs available for minting on the Solana blockchain, raising more than $420,000 worth of Solana from purchasers who sent funds to the Faceless mint address.

Overt Act No. 16:  On November 27, 2021, defendant MAYO received approximately 773 Solana (approximately $153,000) from the Faceless mint address to an account set up for defendant MAYO's use.

Overt Act No. 17:  On November 29, 2021, defendant HAY received approximately 1,006 Solana (approximately $203,000) from the Faceless mint address to an account at a virtual currency exchange.

Overt Act No. 18:  On November 29, 2021, defendant HAY converted the approximately 1,006 Solana into approximately 201,222 USDT and then converted the USDT to approximately 8,028 LINK (approximately $200,860).

Overt Act No. 19:  In November 2021, when individuals participating in a public Discord chat group began to speculate as to the owners of the Faceless NFT project, defendants MAYO and HAY arranged for another individual to be identified as the owner to the

chat group.

Overt Act No. 20: On an unknown date no later than November 20, 2021, defendants HAY and MAYO abandoned the Faceless project.

**Additional Digital Assets**

Overt Act No. 21: On May 21, 2021, defendant HAY drafted the following promotional language for the MoonPortal project: "Welcome to MoonPortal! 'Why fly to the moon, when you can teleport?' We are the most rapidly growing 'Moon Coin' on the market . . . ."

Overt Act No. 22: On June 24, 2021, defendant HAY drafted the following promotional language for the Clout Coin project: "From the people who did $YUMMY, $ELON, and $MILF… The next $100M Mcap gem hasn't even launched yet[.] The next big coin is launching TOMORROW and is doing a public presale so everyone can eat. It is called Clout Coin! $CLOUT is creating the most user friendly NFT market place which aims to bridge the gap between your favorite influencers and the average joe."

Overt Act No. 23: In September and October 2021, defendant HAY hired an artist to create artwork for the Uncovered NFT project.

Overt Act No. 24: In October 2021, defendant MAYO hired Project Manager 1 to help set up the Discord server for the Sinful Souls project.

Overt Act No. 25: On October 12, 2021, defendant HAY wrote to CC-1 stating, "[l]et's start on dirty dogs asap," referring to the Dirty Dogs NFT project.

Overt Act No. 26: On February 10, 2022, a virtual currency exchange account controlled by defendant HAY funded the first transaction of the Squiggles contract creator address.

Overt Act No. 27: In March 2024, defendant HAY recruited a team of people including CC-1 to assist in the launch of ROOST coin.

COUNTS TWO THROUGH FIVE

[18 U.S.C. §§ 1343, 2(a)]

[ALL DEFENDANTS]

The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 9 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

A.   SCHEME TO DEFRAUD

13.   Beginning on a date unknown to the Grand Jury, but no later than in or around May 2021, and continuing through at least in or around May 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAY and MAYO, CC-1, and others known and unknown to the Grand Jury knowingly and with the intent to defraud, devised, intended to devise, participated in, and executed a scheme to defraud victim-purchasers as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

14.   The scheme operated, in substance, as set forth in paragraphs 11 and 12 of Count One of this Indictment, which is realleged and incorporated herein by reference as if set forth in full.

B.   USE OF THE WIRES

15.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants HAY and MAYO, each aiding and abetting each other, knowingly transmitted and caused the transmission of, the following

items by means of wire and radio communication, writings, signals, pictures, and sounds in interstate and foreign commerce:

| COUNT | DATE | INTERSTATE AND FOREIGN WIRE TRANSMISSION | DEFENDANT CHARGED |
|---|---|---|---|
| TWO | 09/22/2021 | Electronic transfer caused by defendant HAY (in California) of approximately 5.08 Ether from the Vault of Gems mint address to wallet address 0xede0…9eca at a virtual currency exchange (outside of California) through an intermediary address. | HAY |
| THREE | 10/31/2021 | Electronic communication from defendant MAYO (in California) to Project Manager 1 (in California) using Discord servers (outside of California) telling Project Manager 1 to "just make shit up" in connection with the Faceless project. | MAYO |
| FOUR | 11/10/2021 | Electronic communication from defendant MAYO (in California) to a family member (in Pennsylvania) telling the family member, "I need an untraced phone to put crypto on." | MAYO |
| FIVE | 11/29/2021 | Electronic transfer caused by defendant HAY (in California) of approximately 1,005 Solana from the Faceless project mint address to wallet address 0x4636…8b04 controlled by defendant HAY at a virtual currency exchange (outside of California). | HAY |

COUNT SIX

[18 U.S.C. §§ 2261A(2)(B), 2(a)]

[ALL DEFENDANTS]

The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 9 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

16. Beginning on or about November 22, 2021, and continuing to at least on or about September 10, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants HAY and MAYO, with the intent to harass and intimidate Project Manager 1, aiding and abetting each other, used an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, namely cellular telephone networks, email, interstate wires, and the Internet, to engage in a course of conduct, including conduct described in Paragraph 17 below, that caused, attempted to cause, and would reasonably be expected to cause substantial emotional distress to Project Manager 1 and his parents.

17. Defendants HAY and MAYO's course of conduct included, among other things, the following:

   a. On November 22, 2021, after Project Manager 1 revealed defendants HAY and MAYO as the owners of the Faceless NFT project, defendant HAY, with the assistance of defendant MAYO, sent, or caused the sending of, an email to Project Manager 1's parents falsely purporting to be from a law firm and threatening legal action. The message said in part, "[Project Manager 1] made some poor choices involving leaking sensitive information online" and included the home

address and ages of Project Manager 1's parents.

   b. On November 22, 2021, defendants HAY and MAYO sent, or caused the sending of, a threatening text message to Project Manager 1 falsely purporting to be from an investor in the Faceless NFT Project.  The message said, in part, that Project Manager 1 had "cause[d] serious damage to [himself] and [his] future" and instructed that he "message [the number] back when [he had] deleted and cleared the name of ALL those involved."  The message said that Project Manager 1 had "1 hour" to remove the information.  The message included the names and contact information for Project Manager 1's parents.

   c. On November 28, 2021, defendants HAY and MAYO sent, or caused the sending of, an email purporting to be from a law firm to Project Manager 1's parents stating, in part: "[Project Manager 1] has tried multiple times to leak the personal information of a few individuals that are now going to make [his] family suffer unless he and his friend . . . stop their shenanigans in the next hour. Otherwise, strap in it's going to get real hectic."  The email proceeded to make a number of threats including threats to falsely accuse Project Manager 1's parents of lewd sexual behavior.  The email ended with the following message: "This is only the beginning if he doesn't [stop]."

   d. On September 10, 2023, defendant MAYO sent, or caused the sending of, a direct message on Instagram to Project Manager 1 stating, in part: "Don't think we forgot about you . . . Get ready to get destroyed . . . This account will be gone. Next is TikTok. Next is discord.  After that you'll see what else."

15

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

18. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

19. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

20. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/

_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

DAVID T. RYAN
Assistant United States Attorney
Chief, National Security Division

KHALDOUN SHOBAKI
Assistant United States Attorney
Chief, Cyber & Intellectual Property Crimes Section

MAXWELL COLL
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section

GLENN S. LEON
Chief, Fraud Section
U.S. Department of Justice

JOHN LYNCH
Chief, Computer Crime & Intellectual Property Section
U.S. Department of Justice

TIAN HUANG
Trial Attorney, Fraud Section, Market Integrity & Major Frauds
National Cryptocurrency Enforcement Team

TAMARA LIVSHIZ
Trial Attorney, Fraud Section, Market Integrity & Major Frauds Unit
National Cryptocurrency Enforcement Team